Go right ahead, please. Good morning, I think. Are we in the afternoon? Good afternoon, Your Honors. May it please the Court, John Hacker for Appellant Ford Motor Company. I'd like to reserve three minutes for rebuttal. Sure. Thank you, Your Honors. Our briefs identify a number of errors in the class certification ruling under review, but its most basic error is that the Court essentially ignored its own summary judgment ruling on the named plaintiff's own claims, which relied almost entirely on owner-specific evidence that would be required to adjudicate on multiple core elements of multiple claims, the same kind of individualized evidence that would be required to adjudicate the same claims when asserted by absent class members. But why is that true? Why is that true, Counsel? Counsel, you made that argument in your briefing, and I appreciate it, and I understand that you knocked out some claims, some individual claims along the way, but we're looking at 23B3 in predominance, and so just flesh this out for me. Why is it necessarily the case that the district court erred for this reason? I don't follow. Well, so the error ultimately is in the class certification ruling itself, because what the summary judgment ruling reflects is the necessity of relying on owner-specific evidence in order to adjudicate the claims across multiple elements. Okay, so one plaintiff, if you could just play this out for me. One plaintiff, I think it was discovered in her deposition that she had used her vehicle for commercial purposes, for a horse business or something? Right. All right. Okay. And I understand, you know, that one was knocked out, but what they have to show, right, is that they could establish commercial purposes, sorry, personal use with common evidence could accomplish that. Correct. Right, and so they pointed to some evidence that they think could accomplish that on a class-wide basis. What are they missing there? So they have to do more than just point to some evidence, right, and that's what that shows is that just pointing to something won't establish it, because that's exactly what happened with respect to, I think it was Plaintiff Hamilton, if I recall correctly. I think it's Hamilton, and I think she had a declaration, but they've pointed, I am speaking in shorthand to be sure, but they have to demonstrate that this is possible, and I think they had indicated that there might be fleet records or certificates or tax records indicating personal or commercial use. Why isn't that enough? Yeah, exactly. I think it sort of proves the point, because the fleet records establish nothing, because that doesn't tell you anything for an individual purchase. What's that person purchasing it for? The other thing they point to, and I think it's the only other thing, is the title might include a commercial name on it, and that would maybe tell you something, but that was true of Plaintiff Hamilton, and it took a long deposition and then lawyerly fights to determine and get to a ruling as to whether or not she was using it primarily for personal purposes. So the only evidence that they cite that's class-wide is the fleets, which is just a non sequitur, and then the fact that the title might say something, that just doesn't tell you anything about personal use. Why couldn't you just require the class members to submit declarations about their, whether it is or isn't personal use? Right, so two related points. One is that's essentially what happened with Hamilton. She alleged, and I assume she wasn't lying in her complaint, that she used it primarily for personal use, and it just turned out not to be true. So somebody could submit. I mean, that's always a risk, right, in any sort of action like this, but the district court has discretion here, and we review it for abuse of discretion, and the district court identified something that seems like a logical solution. Our case law suggests that, you know, if a district court can anticipate and come up with ways that you could actually do common proof or simplify the analysis, then it's not an abuse of discretion. Well, with respect, I disagree. Particularly the way you articulated it, Your Honor, I think illustrates the point. The standard is not, you know, seems like a logical solution. What it requires is a rigorous scrutiny of the actual evidence. Here we have the actual evidence, and the evidence that they're putting forward, right, is fleets, which doesn't do anything, and the titles, which doesn't do anything. Now, I did have a second point. I think that's a decent argument, but that doesn't get to the declaration that the district court also said, which I have suggested. And you have great, I mean, you can point to one great example and say, see, it didn't work there, but one great example, does that undermine the whole ability to do a class action? Well, I mean, it shows the one time it happened. It illustrated this, but this gets to my second point, which is in many other consumer product cases, this is not going to be the same kind of issue because such products are presumptively going to be, you know, used for personal purposes. It's not that hard. It's easy to say, my coffee maker, my hair dryer. But not this kind of Ford truck. The problem here is this kind of Ford truck is overwhelmingly used for business purposes. And, again, people aren't lawyers. They don't know what it means to primarily use. If you're a farmer, you drive your kids to school some day, you go to the grocery store, but you also use it. That certification, their representation that they use it primarily for personal purposes has to get investigated because this kind of truck, this kind of product, unlike other products, is so overwhelmingly used by individuals who purchase it as individuals, but for business purposes. So now you've used a third of your time, and we got through about one out of ten issues. The one I want to turn, I mean, I'm happy to talk about any of them because I'm obviously most interested in what you're most interested in, but I want to spend at least a moment on the issue of Ford's pre-sale knowledge of the defect because I think it really illustrates the problems. In the fraud claims, right? Yeah, on the fraud claims, right? There's implied warranty claims, there's express warranty claims, and then there's what we refer to as the fraud type claims because some of them are consumer statutes. And so on the fraud type claims, the problem, as your honors are aware, a fraud type claim requires proof of Ford's pre-sale knowledge of the defect. It's not enough to say, here's the defect, and we're going to prove a defect. You have to establish to any one of these absent class members, if they walked into court, they would have to prove that Ford was aware of whatever defect they eventually allied on. They've never really identified a defect, but they have to prove them. And their defect theory, generally, for the whole case, encompasses 15 years and four different vehicle platforms, and they say, they allege, and they want to try to prove that they all had the same common defect. Well, they do allege a common defect, and then they talk about the kitchen sink fix. And I'm interjecting here so you can just sort of –  Well, I'll get to the kitchen sink fix if I could. Well, it does seem to be a pretty strong indication that it's a common defect, just so you know where I'm going. Absolutely understood. And I'm not – I don't mean to be talking about the absence of uniform evidence on the common defect right now. I'm talking about the knowledge. Of fraud, yes. The knowledge of fraud and what the court itself said, and this is what's critical. They allege this common defect, but the fraud classes certified by the court only include the first platform, the P131, and the last platform, the P558, skipping over nine years where there's supposedly a common defect through all 15 years in all four platforms. So the theory the court adopted in order to certify a fraud class is that a jury could permissibly find that Ford had knowledge of this common defect for two years at the beginning, didn't have knowledge, forgot something for nine years, and then somehow got knowledge again at the last end of the last chapter of the class. And it's just nonsensical on its face, but there's more formally huge problems with certifying a class that way. First of all, knowledge of a defect, again, assuming they proved through evidence that a defect existed in the P558, if a plaintiff showed up with the P131, it was a P131 owner and said, I want to prove this defect, it would be categorically irrelevant to that case. It would be excluded as a matter of law. Any evidence going to Ford's knowledge of a defect in the P558. But the court mushed them together, puts that all before the jury impermissibly. On the flip side, conversely, essentially the same would be true that if you showed up with a P558 vehicle and said, I want to prove Ford's knowledge, you wouldn't be able to rely on knowledge of the P131 vehicle because the evidence is so different with respect to them. The chassis are different, the frames are different, the setup is different. It's all very technical. The reasons for oscillation are myriad. It can happen for lots of different reasons. And so you've got a completely different factual record with respect to the P131 and the 558. I have a question sort of right in that space, and that is this manifestation of a problem with the vehicle issue. I'm trying to figure out how that makes sense in this scenario where over the course of time, as I understand the facts, the actual part that we're worried about, this damper, was changing. And so if that's true, I guess I would like to hear, I mean I've read it, but I would like to hear you speak to your argument about Wolin and its application here on this manifestation of a problem with the issue. So a few points. We're not actually talking about like one part. They have different stories about what is causing the fact, but it's a performance. The proof of the defect is based on performance. By their own account, the defect is that the oscillation is insufficiently dampened.  We understand that part. No, I understand. And so Wolin is not relevant to the problem of whether or not the common evidence can be used to establish a common defect across the four different platforms because, and this is undisputed, when you look at the expert report of Dr. Lennox, and you'll see it at ER 1120, she's got a chart, and there's just an explanation around it. Again, this isn't contradicted. For each platform, the manifestation rates vary wildly. I mean it's incredible. And it varies like tenfold between the P131 at the beginning and that P558 at the end, and a hundredfold within different platforms and different model years. The best model year with the fewest complaints was 0.25%, and the worst one was I think 30%. Completely different. You know, it's impossible for one jury to say it's the same defect in all of those different models and all of those different platforms based on that kind of evidence. Well, that's the question, right? Does that go to is there or is there not a defect, or does that go to is there or is there not injury? Because I think that the answer to that question matters about whether woolen applies. Absolutely. And it goes to whether or not it's the, it's not the merits of the question whether it's a defect, it's how they're going to prove it. The evidence is going to be based on four different platforms, 50 different model years, that is completely, is indisputably wildly different. So again. Was there ever any suggestion below to do subclasses based on these different platforms? They have not moved for that. And the court analyzed them entirely. And the court, you know, sort of on its own in the fraud classes, took out the middle two platforms because there was just no evidence. The reason the court took it out was that there's no. No, no, I'm not pointing to the clock. Right there. Sorry to interrupt, but before you. Is it just as to the fraud classes? So the court certifies A and D, right, chronologically, but not B and C. That's correct. And is that just as to the fraud claims? That's correct. Okay. Sorry. And just to be clear, this goes to the question of defect. And I think to answer your question on Wolin, the reason the court took them out is there wasn't any evidence that Ford was aware of any defects because there wasn't any evidence of any increased cost of complaints or warranty. And this is a defect that's based on whether or not it's adequately dampening. But he did not certify those. He didn't certify the middle two. On the fraud claims. That's correct. Right. Okay. Right. And he didn't certify them because there was no evidence that for those nine years, when they were using a different damper from a different company, that there was any elevated reports of this oscillation. But those periods were certified for other claims, right? That's correct, and there's other problems with those claims. So that's what I'm trying to get at. I guess what I'm trying to get at is this manifestation question. I'm sort of seeing that as perhaps a foundational issue that then bleeds into all the different claims. But I'm not quite sure I'm seeing that correctly. So manifestation is really – first of all, on the merits, it's relevant to the implied warranty claim because in South Carolina, you have to have manifestation of the defect. And that wasn't true in Wolfe. And Maine. And in Maine. South Carolina and Maine. But in Maine it's also true, but they lost their named plaintiff in Maine. So they don't have a named plaintiff. But it's also true. It was contingently certified. They have to come up with another. Yes. Right. Okay. Not fighting that at all. All right. I absolutely agree. In both of those states, you have to have manifestation. That wasn't true in Wollin. That wasn't a substantive requirement. So because of Wollin or because of what may have been a misreading of Wollin, they made no effort to show manifestation? Is that right? Right. They said we don't have to because of Wollin. So they didn't even try. What's the right answer then, counsel? Forgive me for interrupting, but we have a time issue here. So I'm trying to figure out what the right answer is. If they have misread Wollin to understand that manifestation is irrelevant, do we send on this one issue out of so very many issues in this case? Are they entitled to take another run at that? Well, we wouldn't think so. They put on their best shot, and they didn't even argue. I guess I'm not quite sure I understand that because we would be saying the district court misapplied the law, and why wouldn't we send it back to the district court with a correction of the law and then say reanalyze this? It's not their best shot if they misunderstood the law. In fact, my understanding of the record is they took no shot because they thought it was irrelevant. They didn't try to prove manifestation. I mean that they could have proved that on a common basis. If the court wanted to send it back, they're not going to be able to show that where manifestation is required that they can get a class certified. That's above our paper. They could have argued it below. They could have said there's two reasons. One, it's common, and two, it's not required, or vice versa. They didn't even try to make that argument. I do want to save some time for rebuttal if that's... You're out of time. We'll give you a little bit of time for rebuttal, but I don't think we're done with you yet. Oh, yeah, please. I mean, it's your time. Judge Smith, do you have additional questions? No. Judge Forrest? Hang on, just one. So does manifestation relate at all to the express warranty claim? That's not an argument we're making now. The express warranty claim is non-certifiable. We submit because it requires, in all of the states, evidence that the individual owner presented their car for repair and did not get it repaired after multiple efforts, and that is an individualized proof, as shown by the... So my understanding from your argument, then, is manifestation is relevant to some degree or another as to the implied warranty and to fraud. That's correct. Anything else? And just to clarify on the fraud, it's not a required element of proving fraud. That's not what we're saying. What we're saying is, given the way they're trying to prove the defect... Right, I understand. Right, then you have to understand the manifestation rates to know if it's working or not. Thank you, counsel. Thank you. I thought there was a... Forgive me for jumping right in, but maybe I'll let you state your appearance first, and then I'll jump in. Thank you, Your Honor. Good afternoon. May it please the Court. My name is David Wright. I represent the class plaintiffs and the class members in this action. There's an inconsistency between the original order and then the motion... I'm sorry, the order on reconsideration and a motion on reconsideration.   I want to make sure we have this right. I just want to make sure that you agree with the opposing counsel's statement about for the fraud-based claims that the Court certified the first and the last model, I guess it is, A and D. So certified P356 and P473, but only as to the fraud-based claims. Is that right? Yes, although I guess with one clarification, I think Your Honor was talking about the motion for reconsideration. There was only one change in the motion for reconsideration. There had been a Texas cause of action that had been dismissed at the pleading stage that wasn't properly accounted for. The Court, in its class cert ruling, did, with regard to the fraud claim, only certify the class as to the first generation, P131, and the last generation, P558. I wasn't talking about the previously dismissed claim. I just want to make sure that we're clear on the other... Yes. ...what may have been a typographical error or a Scrivener's error. And that's not being contested by Ford. We'll talk when you come back. Do you know what I'm talking about? I think the Court flipped the certified classes and the uncertified, only in the second order. The certified class for the fraud claim was the... and for the statutory consumer protection claims was the first generation 131 and the last generation 558. All right. Thank you, Your Honor. May it please the Court, Ford's argument here is not that the district court misunderstood or misapplied Rule 23. Ford's argument is that Rule 23 itself, the class action procedure, violates due process. And it does so in this way. Ford challenges, essentially, the very nature of the predominance requirement of Rule 23b-3. It has...what it has done is said, look, the district court considered all of our defenses in the summary judgment motion, made findings on that, and because it considered plaintiff-specific evidence, it necessarily then means that plaintiff-specific evidence must be considered in the class action. But that's not...the court didn't rule that there weren't individualized inquiries that may still need to be made. What the court did was made a very careful analysis of all of plaintiff's claims and found that the claims for which there is common proof, the claims for which there is a common theory and common evidence, predominate. They are...and that goes to... those include claims of... the common defect, the common...the manifestation. It even included presentment, that that could be done with Ford's repair records. It included a common fix. And that's a really important aspect here, is that we're not dealing with... and it crosses over into merits a little, I guess, but we're not dealing with a theoretical defect. Ford knew since 2005 that its vehicles were prone to and susceptible to violent shaking suddenly at freeway speeds for no reason other than the driver... the vehicle would contact either an expansion joint in the road or a pothole or some other irregularity that would set up a violent shaking, not just a transitory violent shaking, a self-sustaining oscillation. We understand. Okay. I'm concerned about this being unlike many of our cases where the statute of limitations or facially...claims that appear to be facially, you know, too old, too stale, don't defeat class certification because we're talking about almost 20 years here. Yes. It's a very long time. And I think you're relying on tolling theories, and this is one part of your claim where I'm not sure I understand what the court relied upon or what you offered in the district court to show that tolling or the basis for tolling could be established with common proof. So the establishment for common proof would be Ford's concealment. And the court actually did expressly in its order deal with it because first in the summary judgment... Well, Ford's concealment, are we talking about the technical service bulletins? I'm sorry? Are we talking about the technical service bulletins? What evidence is it? No. What is it? What specific comment evidence would there be? Yes. It would be A, Ford's knowledge of the danger of sustained steering oscillation. It's misinformation to its consumers and to the public. Is that about the tire inflating bulletins? That includes the tire inflating bulletin. That includes Ford's statements through its dealers to customers that this is because of the wear of parts, lack of maintenance, aftermarket modifications. It had a laundry list of things. Ford did not admit until 2020 when it announced its customer service program. That was the first time Ford acknowledged to any of its customers that its vehicles had a problem with sustained steering wheel oscillation. We appreciate that. It's in your briefing. But I'm still concerned. This is many different models, many different years, over a 20-year span. And I'm trying to figure out if there's a place in the record where there was an attempt to just chronologically walk this out, play this out, the allegations of common proof that you show would have sufficed to establish tolling. And we presented those to the— Is it in the district court record? We presented them to the district court in the motion for class certification. You know, we have—it's very detailed. You have the exhibits in the excerpt of record. We lay out the evidence of what Ford knew, when Ford knew it. It's the when part that I'm trying to get at. And the when Ford knew it. And so where do I look for that in the record? Well, it would be in the declaration of David Seawright in support of plaintiff's motion for class certification. So I'll just say, I mean, I alluded to this in a question from opposing counsel, but it's hard to understand how all of these required things are subject to common proof when all of these models from all of these years are in one class together because there are admitted differences between the models. The manufacturer of the concern that we have in this case, the part is changing, and apparently there's failure rates or manifestation rates that change correlated to that change. So there are differences between the models. And so how is it that you're going to prove defect, manifestation, knowledge of a problem when those things have changed over time with the model changing? Because it's a common design defect. It's a common front suspension architecture. I understand we're talking about one part. One part, same part, over time, still not working right. But there have been changes to how it's configured or where it's manufactured from or whatever that is impacting performance. And I guess my response to that is it is a design of the front suspension. To say it's one part is a... The gloss that opposing counsel keeps shaking his head no about every time you say it. Each of these four generations of vehicles have the same monobeam front suspension. That means it's a single shaft between the front two wheels. That's significant because monobeam suspension architecture is susceptible to sustained steering wheel oscillation, also known as death wobble, where energy is introduced into the system and that's what makes the wheels shake violently and you have to slow or stop the vehicle to... or dramatically slow the vehicle to get it to stop. So the way you manage that is with a steering damper. The steering damper is what absorbs the energy that's introduced into the system. We have read the briefing, but I don't think you're answering Judge Forrest's question. That's the thing that you want to say is a defect, is the damper wasn't effective. How it was put in there, how it was working, if it's apart, whatever, isn't working correctly, but that is changing over time. And this goes, not to jump to the end of the story, they changed it in a series of efforts, secretly, because they're not disclosing to anybody that the damper's behind this from 2005 until 2020. They are modifying the damper through the three generations, unsuccessfully attempting to prevent sustained steering oscillation. Maybe I could ask it this way. To what extent are you relying on the kitchen sink fix? So that's what I was getting to, which is in 2020, Ford finally, after this lawsuit was filed, after William Clay Ford got involved, finally put its resources and developed a kitchen sink damper. And what they found was the kitchen sink damper, which is what they ultimately in 2022 developed and implemented in their customer service program, was the first damper since 2005 to effectively eliminate sustained steering wheel oscillation. And they made it retroactive to each of the generations. They didn't just do it for the 558. They did it for the 473, the 356, and the 151, and made a conversion part because that is what addressed it. The question is how, given that there were all of these differences along the way over the course of 20 years, and it's an important question, how are you going to offer common proof? Is it just the kitchen sink that you're going to rely upon, the kitchen sink fix, and then ask the jury to sort of reverse engineer that this was the common defect, or what are you going to do? No, Your Honor. We're going to show, we're going to present to the jury Ford automobile designers' own discussions, their own email and their own frustrations about the problem of sustained steering wheel oscillation that these cars were having, these vehicles were having throughout all four generations. We're going to show from Ford's warranty claim rates that sustained steering oscillation, which is a condition that Ford has a zero tolerance for, existed throughout all four generations of vehicles, and that these conversations with its design engineers and these warranty claim rates were known to Ford from the time of the 2005, launch of the 2005, on through they're finally addressing it in the customer service program. I take your position to be that, yes, there were changes over time, but it was like a great continuum. Basically, it's the same problem, dealing with the same thing, but it's like it's all bound together. The fact that there's a little thing here, a little thing there, it's still part of the same initial problem, and from your perspective, that is a common problem. Is that correct? That is exactly correct. We have identified one common defect. We have a single definition for it. It manifests in the same way, one way. This says we don't, we're not throwing everything at the wall. There's a single common defect, and it exists as important. That single common defect exists at the point of sale. So is it your, was it not your position that you didn't need to show manifestation because of Woolen? We did not need to show manifestation because of Woolen. What if we say otherwise? What if we think you're misreading Woolen? Then what happens? If there were to be a change in the law and manifestation were to be required, then we, or if we misread Woolen and manifestation would be required, we would be using things like Ford's repair records to establish manifestation, Ford's warranty claim rates to establish manifestation. We could still take on that evidentiary burden on a common basis based on common evidence that's in Ford's possession. Okay, so I don't know the answer to this question. Would I be correct in understanding that you haven't tried to do that yet, that is, not prove it, but offer the types of common evidence that would allow you to show manifestation because you understood you didn't have to? We have. Opposing counsel argues that your position in the district court was that manifestation was irrelevant because of Woolen. I'm paraphrasing. We do believe that manifestation was irrelevant because of Woolen. I know that. My question is not that, sir. My question is not that. I know that is your read of Woolen, but my hypothetical, just hypothetical, if we think that is not correct, is it the case that the trial court heard how you would have your theory about what common evidence could be used to show manifestation, or is it the case that you haven't taken a run at that yet? So when you say we haven't taken a run, in the record we do have a warranty claim rates. In the record we do have customer complaints to Ford. All of those would be related to manifestation. I didn't ask a good question. It's not that I think the evidence isn't there. My question is really going to what argument did you make? Because I don't see it in this order that the district court relied on. It's irrelevant, but even if it weren't irrelevant, they can do it. They have common evidence that's available. And the answer to that, we really didn't, I don't think that manifestation argument was developed. There wasn't an oral argument on the class cert motion, so it was ruled on the papers, and there was no further record developed outside of the papers themselves. That's helpful. Thank you. I think to conclude, what is important here is, again, the idea of predominance and the idea of the district court made a meticulous record, balancing the individual issues versus common proof issues, found that there was predominantly common issues, found that this was manageable, and that the court could develop an efficient way to deal with any individual issues that remained. If the court decertifies the class, that will prevent tens of thousands or hundreds of thousands of plaintiffs from having their claim heard because of the practical impediments to bringing a complex action like this when you're dealing with a flaw that, while it may cost thousands of dollars, and there's a lot of consumers that have spent thousands of dollars, it's not sufficient for the individual plaintiffs to pursue this type of action on its own. And that's why Rule 23 and its predominance requirement is so important and why the individual issues here do not predominate because if they don't predominate for this class, there's not many classes they would. If we're going to say personal use defeats class certification, then we're going to say any consumer protection statute that has as an element personal use can no longer be adjudicated with the class action device, and that would be incredibly injurious to consumers across the nation. Anything further? Looks like not. Thank you, counsel. Thank you. Thank you for your indulgence. To answer your question about the typo, it was a typo, clearly, on page 7. The court said that only the 356 and 473s are certified. Those are the ones that were not certified. They flipped. I think we all agree with that.  The two issues I just want to address briefly are this kitchen sink theory that Ford somehow admitted its knowledge in 2020. The new Hitachi damper that Ford adopted in 2020 was a new damper that wasn't available before. That's what the evidence shows that Ford adopted it because the Teneco damper uniquely, unlike the prior dampers, had a manufacturing defect problem. There was too much air, so it didn't work the way it was supposed to. So Ford corrected that problem, got a Hitachi damper, and then said anybody who comes in who's got a problem, who says they've got oscillation can have this damper. It doesn't establish any of the models for all of the years that we care about. I think that's right, but that doesn't show that that's not a concession. There was a defect. There's all kinds of owner issues, right? A warranty claim, a fraud claim are not Consumer Bureau claims. Owners may not be satisfied with the oscillation. You bring it in and you fix it, and that's what they did. That's not a concession that they were defective before because in real time the evidence shows there's basically no reports of any problems. As to the common defect, Judge Smith's question about it being the same problem over time, that's just not what the evidence shows. For nine years, nine years, there was just no complaints. There were no warranty rates that were different from sort of any other vehicle. It just didn't exist. It wasn't like your case in Huynh, Judge Smith, where you had one clutch with one problem that existed throughout the vehicles, and the court said that that kind of thing didn't prevent, at least as to the damages, didn't prevent a classification. This is a completely different situation. And similarly— From your perspective then, the fact that the issue was, if you will, of a common nature, the shimmy and so on, doesn't allow the plaintiffs to tie this all together. Is that correct? In this case, with this evidence, that's correct, because what they're alleging is that the shimmy had the sustained oscillation. Well, all 100% of cars that have been sold for 100 years that have a monobeam front axle have sustained oscillation. You just have to prevent it. And lots of things can cause it. All kinds of things. Worn tires, wear on the axle. And so when somebody comes in and says, I just had this experience, you can fix it lots of different ways depending on what has just caused it. That's the problem here. It's the architecture. So many things can contribute to it, both the performance overall and the individual instances of it. So it's not like one problem with one component. I think you're the one that mentioned you had a damper that didn't work. It was defective. Ford substituted something else to correct the problem. But the problem was still the same. It was just manifested in different ways. Ford tried to fix it, but it was the same problem. Isn't that correct? Not over the class period for sure, Your Honor. It was a completely different – to the extent there were higher reports in the 2005-2007 period that had zero to do with the nonexistent Teneco damper that was later not working the way it was supposed to. Then you have basically no problems conceitedly for nine years. There's just nothing is going on. Everything is working just as it's supposed to. And then a new damper comes in that demonstrates some problems, and Ford immediately responds by fixing that problem. But it's not the same problem in the sense of the same defect. You're not talking about a clutch that just fails where the evidence shows it's substantially certain to fail, as some courts will say. You can statistically show that, and then it's the same problem. This is just something that's inherent. Their own expert says it's inherent to the existence of a Monobebe axle. Lots of things can cause a given instance of it, and lots of things can be done to prevent that. And so they're just not the kind of evidence here that they can cite, they're trying to cite, that would establish a common problem, certainly not one that Ford was aware of for the entire period. Thank you, Your Honors. Thank you all for your advocacy. We appreciate it very much. We'll take that case under advisement. We'll stand in recess for the day. All rise. This court for this session stands adjourned.
judges: SMITH, CHRISTEN, FORREST